# ISAAC WELLS *et al.*

## *v.*

# MERCIE H. MILLER, Administratrix, etc.

1. NEW TRIAL IN TROVER — *where one of several defendants is acquitted and the others found guilty.* Where one of several defendants in trover was acquitted and the others found guilty, an appeal by the latter and reversal of the judgment, as to them, will not affect the judgment of acquittal in favor of the former.

2. FORMER DECISION. What was said in the case of *Cochrane* v. *Ammon*, 16 Ill. 316, indicating a different rule was mere *obiter*.

3. WITNESS — *competency.* Upon the new trial resulting from the reversal in favor of those taking such appeal, the party who was acquitted upon the first trial is a competent witness in behalf of his former co-defendants.

4. ADMINISTRATOR — *concerning the title of, to the property of a decedent,*

*coming into his domicile — from a foreign jurisdiction.* Where, in an action of trover, brought by the administratrix of one Miller, deceased, against Wells & Sears, for the tortious taking of a certain quantity of lumber, the proof showed, that the decedent, as also the defendants, were residents of this State, and that decedent was in charge of the property in question, transporting it from this to the State of Tennessee, and that while *in transitu,* and on the Missouri shore, the decedent died, leaving no assets or creditors residing elsewhere than in this State, and that no administration had ever been taken out in either of the States of Missouri or Tennessee, to which latter State the property was taken by. Wells & Sears and sold, — *held,* that if the property of the decedent, after his death in Missouri, was at any time while *in transitu* within the limits of the State of Illinois, it became assets in this State, and the title of the administratrix here attached by relation the moment her letters were issued.

5. SAME. The property of a decedent coming from a foreign jurisdiction into that of the domicile, immediately vests in the administrator there, if administration has not been taken out in such foreign jurisdiction.

6. SAME—*jurisdiction of, over property having no fixed situs—rule not absolute.* There is no unbending rule in regard to property having no fixed *situs,* and the jurisdiction of the administrator is left to depend largely upon what may be required for the attainment of justice in each case as it arises.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action of trover, brought by Mercie H. Miller, administratrix of Joseph C. Miller, deceased, against Isaac Wells and John Sears, impleaded with John S. Noble, for the tortious taking of a certain quantity of lumber. This case was before the court at a former term, and is reported in 37 Ill. 276, where the facts of the case may be found fully stated in the opinion then delivered.

Messrs. BONNEY & GRIGGS, and RICH & WATERMAN, and Mr. J. H. SLEEPER, for the appellants.

Mr. J. S. PAGE, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This case was before us at a former term, and is reported in 37 Ill. 276. The leading facts are stated in the opinion then delivered, and it is unnecessary to recapitulate them here. At the trial had after the case was remanded, Frank Miller did not

produce the bill of sale, which he claimed in his former affidavit to have found after the termination of the former trial; and being asked why he did not produce it, said he had voluntarily destroyed it a few days before, after having been served with a subpœna *duces tecum.* His general reputation for veracity was also impeached, and the jury evidently gave no credence to his testimony. They found another verdict for the plaintiff for a larger sum than that given at the former trial.

There is an error in this record, however, for which we are obliged again to reverse the judgment. Noble, one of the defendants, was found not guilty, at the former trial, and there was judgment on the verdict. His co-defendants, Wells and Sears, were found guilty, and from the judgment on that verdict, they appealed. Noble did not unite in that appeal, as the judgment was in his favor. We reversed the judgment, and remanded the case. At the recent trial, Wells and Sears offered Noble as a witness, and he was not permitted to testify, on the ground that he was a party to the record. It is now so contended by the appellee, while the appellants insist that he is no longer in court.

We had occasion to consider a question analogous to this, or rather the very question itself, in the recent case of *Johnson* v. *Jones,* decided at the last April Term (44 Ill. 142). In that case, which was an action of trespass, two of the defendants pleaded a special plea of justification, and two others the general issue only. The plaintiff demurred to the special pleas. The demurrer was overruled and the plaintiff abided. The two defendants who had pleaded the general issue then insisted on a trial. The plaintiff urged that the disposition of the demurrer to the special pleas, as those pleas set up a defense which would have been available to the others if they had pleaded it, disposed of the entire case. But the court impaneled a jury, and, the plaintiff offering no evidence, the issue of "not guilty" was found for the two defendants who had not joined in the special plea. When the case came before this court, we held that these two defendants had a right to insist on a trial of the issue of "not guilty," upon which alone they had placed their

defense; and, in a supplemental opinion, on the motion for a rehearing, we held that the reversal of the judgment on the demurrer would not expose those defendants to the chances of another trial, but would leave the case standing for another hearing only as to those defendants whose judgment on the demurrer had been reversed.

We are fully satisfied with this ruling, notwithstanding what was said by the court in *Cochran* v. *Ammon*, 16 Ill. 317. What was said on this point, it will be observed, was not necessary to the decision of the case, but merely *obiter*. In the case before us, Noble was found not guilty by the jury at the former trial; Wells and Sears guilty. Judgment was so entered. Wells and Sears appealed. Noble, of course, did not. The judgment was reversed; but what judgment? Certainly not that in favor of Noble, who had not united in the appeal, and who was not before this court at all. The judgment in his favor, and that against Wells and Sears, were not a unit, but wholly independent of each other, though they may have been included in the same entry upon the records. Wells and Sears had a clear right to bring the judgment against them to this court for examination and reversal. The statute gives that right to one or more of several defendants. But they had no right or power, in doing this, to reverse the judgment in favor of Noble. That judgment was not before this court by the appeal of Wells and Sears from the judgment against them, and Noble himself was not before us. We had no more right to take from him the benefit of his judgment, than we had to reverse a judgment rendered in some other suit over which we had acquired no jurisdiction.

On the other hand, Wells and Sears had the same right, under the statute, to bring the record here and have it considered, so far as it affected them, as if all the defendants had united in the appeal. But to hold, because Wells and Sears reversed a judgment against them for the errors committed against them, that, therefore, the judgment in favor of Noble is to be set aside, of which no complaint has ever been made,

386    WELLS *et al. v.* MILLER, ADMX., ETC.    [Sept. T.,

Opinion of the Court.

and which has never been re-examined, and Noble is to be subjected to the hazard of another trial, would be to commit great injustice. We are of opinion that Noble was not a party in the last trial, and was, therefore, a competent witness.

A question is also made by appellants as to the right of the plaintiff to maintain this action. It is insisted that the title to this lumber was never in her, as her letters of administration could have no effect beyond the limits of this State. On this point the court instructed, if the lumber was on the Missouri shore of the Mississippi river at the time of the death of Joseph C. Miller, and did not come on the Illinois side of the dividing line of the river, on its way to Memphis, where the lumber was taken, the plaintiff can not recover in this form of action; but if it did come on the Illinois side, no matter for how short a period, and if the jury find for the plaintiff on the other questions in the case, which the instruction proceeds to specify, they will then find for the plaintiff, on the entire case.

This instruction, in regard to the title of the administratrix, was as favorable to the defendants as they could ask. If the property was at any time within the limits of Illinois after the death of Miller, it was assets here, and the title of the administratrix attached by relation the moment her letters were issued. *Makepeace* v. *Moore*, 5 Gilm. 477. It is said there was a paramount right of administration either in Missouri, where the property was at the time of the death, or in Tennessee, whither it was taken and where it was sold. But the other facts of the case are to be considered. The decedent resided here. His creditors, so far as appear, all lived in this State.

The lumber was sent from here, and was merely *in transitu* when on the Missouri shore, and was seeking a market in Tennessee. So far as appears, he left no other assets in either Tennessee or Missouri, and no administration has ever been taken out in either of those States. The defendants, charged with taking the lumber tortiously, reside in Illinois. If administration were taken out in Tennessee or Missouri, these defend-

ants could not be reached under such administrations, and the lumber itself, very soon after it reached Memphis, was sold, and passed practically beyond the reach of any administration.   If, then, this lumber is to be made available at all to the estate of Joseph C. Miller, it can only be done by allowing the Illinois administratrix to bring an action against these defendants and enforce their liability, so far as the proof may show them to have incurred any.   While, therefore, we would not be understood as saying, that the right of this administratrix to bring suit, depends wholly upon whether the lumber, on its course to Memphis, came on the Illinois side of the boundary line, we have no hesitation in saying, if it did so come, it became at once assets of the place of the domicile, and the title of the plaintiff, when afterward appointed administratrix, attached by relation.   In *Collins* v. *Bankhead*, 1 Strobhart, 25, it was held that property of the decedent, coming from a foreign jurisdiction into that of the domicile, immediately vests in the administrator there.   We can entertain no doubt of this, where administration has not been taken out in such foreign jurisdiction, and such was the instruction of the court.

In regard to property *in transitu*, Story says, in his Conflict of Laws, section 520: "Indeed, according to the common course of commercial business, ships and cargoes, and the proceeds thereof, locally situate in a foreign country at the time of the death of the owner, always proceed on their voyages and return to the home port, without any suspicion that all the parties concerned are not legally entitled so to act; and they are taken possession of and administered by the administrator of the *forum domicilii*, with the constant persuasion that he may not only rightfully do so, but that he is bound to administer them as part of the funds appropriately in his hands.   A different course of administration would be attended with almost inextricable difficulties, and would involve this extraordinary result, that all the personal property of the deceased must be deemed to have a fixed *situs* where it was at the moment of his death, and if removed from it must be returned thither for the purpose of a due administration."

It will be found, on an examination of the cases, that there is no unbending rule in regard to property having no fixed *situs*, and that the jurisdiction of the administrator is left to depend largely upon what may be required for the attainment of justice in each case as it arises.

The judgment is reversed and the cause remanded.

*Judgment reversed.*