Jimmy **WRIGHT**, Plaintiff–Appellant,

v.

**TENNESSEE BOARD OF DISPENSING OPTICIANS**, Defendant–Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 17, 1988.

Permission to Appeal Denied by Supreme Court Nov. 7, 1988.

Dennis J. Meaker, Columbia, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, General Jerry Taylor, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

This is a judicial review of an administrative decision of the Tennessee Board of Dispensing Opticians whereby the license of Jimmy Wright, a Dispensing Optician, was suspended indefinitely. The Trial Judge affirmed the decision of the Board, and Jimmy Wright appealed to this Court presenting three issues as follows:

1. Did the trial Court err in concluding that the findings of fact made by the Board of Dispensing Opticians are sufficient for judicial review in view of the nature of the controversy and the intensity of the factual dispute?

2. Did the trial Court err in concluding that the findings of fact of the Board of Dispensing were, with one exception, supported by evidence which is both substantial and material in light of the entire record in the case?

3. Did the trial Court err in concluding that the decision of the Board of Dispensing Opticians was not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion?

Appellant was notified of forty three charges as to which the Board heard evidence. The Board found appellant guilty of five separate violations of regulatory laws and/or regulations. The judgment upon the first violation is conceded to be unsupported by evidence, so that only four violations are involved in the present appeal. They are:

2. Respondent has performed some type of refraction on patient Sheppard.

3. Respondent has treated a human ailment of physical condition of the eye by placing drops in patient Dickerson's eye.

4. Respondent has made eye glasses for patient Sheppard without a written prescription from an ophthalmologist or optometrist.

5. Respondent has incompetently prepared eye glasses for patient Sheppard.

The evidence supporting charge no. 2, above, is as follows:

Ms. Sheppard testified that she went to appellant in 1983 for an eye examination because of pressure behind her eyes; that appellant examined her eyes, had her read a chart and look through a big black machine similar to one she had looked through in the office of an eye doctor.

The evidence supporting charge no. 3 is as follows:

Ms. Dickerson testified that she developed an eye infection, that her eyes were "very red and prickly"; that she consulted appellant who had her look through a machine, assured her that nothing was wrong with her eyes, put some drops in them and told her that the drops should take care of

the situation; and that appellant put drops in her eyes every day for a week or more.

Appellant denied any contact or transaction with or treatment of Ms. Dickerson.

Charge no. 4 is supported by the following evidence:

Ms. Sheppard testified that when she first saw appellant she used no glasses or contact lenses; that appellant examined her eyes, and told her that she needed glasses which would be ready in about a week; and that appellant did furnish glasses to her, but told her to go to a doctor for a second opinion.

Charge no. 5 is supported by the following evidence:

Ms. Sheppard testified that she could not see through the glasses furnished by appellant that her eyes hurt worse after use of the glasses, and that she subsequently obtained other glasses from a qualified practitioner which were satisfactory.

Appellant denied any contact or transaction with or treatment of Ms. Sheppard.

Appellant first insists that the findings of fact by the Board are insufficient for judicial review. T.C.A. § 4–5–314(c) provides as follows:

(c) A final order, initial order or decision under § 50–7–304 shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness. Findings of fact, if set forth in language that is no more than mere repetition or paraphrase of the relevant provision of law, shall be accompanied by a concise and explicit statement of the underlying facts of record to support the findings....

The findings of fact by the Board are as follows:

2. Respondent has performed some type of refraction on patient Sheppard.

3. Respondent has treated a human ailment or physical condition of the eye by placing drops in patient Dickerson's eye.

4. Respondent has made eye glasses for patient Sheppard without a written prescription from an ophthalmologist or optometrist.

5. Respondent has incompetently prepared eye glasses for patient Sheppard.

■ Appellant asserts that the Board erred in failing to render a finding of fact as to 38 of the 43 charges against him. Since appellant was not found guilty in respect to 38 of the charges, the failure to find facts in respect to said charges is harmless, appellant was not prejudiced thereby, and he has no standing to complain.

Appellant next asserts that finding no. 2, above, is outside the scope of the charges originally filed against him. Counts (6) and (7) of the charges are as follows:

Counts Six (6) and Seven (7)—on or about January 20, 1983, and late 1983 or early 1984, Respondent performed eye examinations on patients Sheppard and Birdwell, respectively.

One of the accepted meanings of the word, refraction, is:

The act or technique of determining ocular refraction and identifying abnormalities as a bases for the prescription of corrective lenses.

*Webster's Third New International Dictionary, Unabridged.*

The word, ocular, means:

Of or relating to or connected with the eye.

*Ibid.*

It is therefore clear that the finding that appellant "performed some type of refraction on patient Sheppard" is equivalent in meaning to "performed an eye examination on patient Sheppard".

Finding no. 1 was therefore within the scope of the charges, especially counts (6) and (7), quoted above.

■ Appellant next complains that the Board gave no reasons for accepting or

accrediting some evidence offered against him and not rejecting his evidence. This Court does not understand the law to require the Board to explain its decisions as to credibility of witnesses. No authority is cited by appellant to support such a duty and none is known to this Court. As to those matters on which the Board found facts and found appellant guilty, the findings speak for themselves. The Board believed the evidence supporting its findings and disbelieved evidence to the contrary.

■ Appellant next states correctly that, on petition for review, the Courts are required to:

Review the entire record and to take into account whatever in the record fairly detracts from its weight. T.C.A. § 4–5–322(h), *Big Ford [Fork] Mining Company v. Tennessee Water Quality Control Board,* Tenn.App.1981 (620 S.W. 2d 515).

However, it is not the burden of this Court to minutely search a voluminous record for evidence to support the arguments in briefs. *Schoen v. J.C. Bradford Co.,* 642 S.W.2d 420 (Tenn.App.1982).

■ Appellant particularly complains of the failure of the Board to convict him on a charge supported by a Ms. Dickerson. The action of the Board in dismissing charges is not before this Court. Appellant is not in position to complain of error favorable to himself. *Hays v. Crawford,* 48 Tenn. (1 Heisk) 86 (1870); *Britton v. Thompson,* 14 Tenn. (6 Yerg.) 325 (1833); *Whitehurst v. Howell,* 20 Tenn.App. 314, 98 S.W.2d 1071 (1937); *Herstein v. Kemker,* 19 Tenn.App. 681, 94 S.W.2d 76 (1936).

■ Finally, appellant asserts that the decision of the Board was arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Appellant's brief states:

For the reasons set forth hereinabove as to the first two assignments of error, a reading of the record in this cause reveals that the Board disregarded the proof adduced at the hearing except with regard to two patients or customers of the Petitioner and with regard to certain newspaper articles (about which the Board rendered a finding which the State and the Chancellor agreed was unsupported by substantial and material evidence).

Again, it is evident that the Board made a few conclusory statements which it labeled "findings of fact" in order to dress up what is from all appearances a foregone conclusion as to the disposition of the Petitioner's license. The Board's decision, "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case, or the result of an unconsidered willful and irrational choice of conduct, rather than of a sifting and winnewing (sic) process," is, by the very definition of the phrase, arbitrary and capricious. 73A C.J.S. § 298–99. Fundamental fairness will not allow this tainted decision to stand.

Appellant's argument contains no references to the record to sustain the quoted conclusory statements.

The sum and substance of this case is that appellant was found guilty of (1) performing an eye examination, (2) treating a patient's eyes with drops, (3) dispensing eyeglasses without a prescription and (4) incompetently preparing eye glasses for a patient.

At the time of these occurrences, T.C.A. §§ 63–14–102, 104, 110 and 111 provided as follows:

63–14–102. "Practice" defined.—(a) The practice of dispensing opticians is defined as the preparation, adaptation and dispensing of lenses, spectacles, eye glasses, and optical devises to the intended user thereof on the written prescription of a physician or optometrist, duly licensed to practice his profession and the dispensing of frames as a unit or individually to the intended user thereof.

(b) A person registered under the provisions of this chapter is specifically prohibited from engaging in the practice of

ocular refraction, orthoptics, visual training or prescribing contact lenses, or the prescribing of subnormal vision aids or telescopic spectacles.

(c) Nothing in this section shall be construed to authorize or permit any dispensing optician to hold himself out as being able to or to either offer, undertake or attempt, by any means or method, to examine or exercise eyes, to fit contact lenses, or to diagnose, treat, correct, relieve, operate or prescribe for any human ailment, deficiency, deformity, disease, injury, pain or physical condition, however, dispensing opticians may fit contact lenses in the presence of and under the direct supervision of a licensed optometrist or ophthalmologist.

. . . .

63–14–104. Revocation or suspension of license.—It shall be unlawful for a dispensing optician to act as the agent or representative of any physician or optometrist on any account. The state board of dispensing opticians shall have the power and it is hereby made its duty to suspend for a specified period of time to be determined by the board in its discretion, or to revoke any certificate to practice as a dispensing optician in the state of Tennessee whenever the dispensing optician shall be found guilty of any of the following acts or offenses:

(1) Fraud in procuring a license;

(2) Immoral, unprofessional or dishonorable conduct;

(3) Habitual intoxication or addiction to the use of drugs;

(4) Conviction of a felony;

(5) Use of comparative statements or claims concerning the professional excellence or abilities of any person or group of persons licensed to practice their profession under the laws of the state;

(6) Failure to renew annual certificate required under §§ 63–14–106, 63–14–107;

(7) Offering discounts or inducements to prospective patrons by means of coupons or otherwise to perform professional services; provided nothing in this section shall be construed to prohibit the giving of a discount on either merchandise or services to charitable institutions;

(8) Division of fees or agreement to split or divide the fee received for professional services with any person for bringing or referring a customer. [Acts 1955, ch. 98 § 4; T.C.A., § 63–1404.]

63–14–110. Penalties for violations—Exemptions.—(a) Any person who shall practice as a dispensing optician as defined in this chapter without first complying with the provisions of this chapter, or who shall violate any of the provision of this chapter shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than one hundred dollars ($100) nor exceeding five hundred dollars ($500), or imprisoned in the county jail not more than six (6) months, or both in the discretion of the judge trying the case. . . .

63–14–111. Suspension or revocation of license—Injunction.—(a) The Board of dispensing opticians may suspend or revoke the license of any dispensing optician who has been found guilty by the board of the violation of any of the provisions of this chapter or of the code of ethics and standards of practice for dispensing opticians established by the board in accordance with the provisions of this chapter, provided that in all proceedings for suspension or revocation of license the holder of the license shall be given fifteen (15) days notice of the charges made against him and shall be entitled to be heard in person, by counsel, or both.

(b) The penalty for first violations of subsections (g)—(i) of § 63–14–103 shall be suspension of the offender's license for a period of time to be set by the board after a proper hearing. A second suspension may be grounds for revocation of the license by the board.

. . . .

Rule 0480–7–.01 of the rules of the Board provide:

Immoral, unprofessional, or dishonorable conduct shall include but shall not be limited to the following:

a. The employment of any person or allowing any person to solicit business in any manner.

b. The performance of any unethical conduct designed to, or likely to, deceive, defraud, or harm the public.

c. Being a party to or aiding and abetting the violation of these regulations or the laws of the State of Tennessee regulating the practice of dispensing opticianry.

d. The intentional or negligent use of any false, fraudulent, or forged statement, writing or document, or the use of any fraudulent, deceitful, dishonest, or immoral practice in connection with any of the licensing requirements of T.C.A. § 63–1401 et seq.

e. The use of untruthful or improbable statements or flamboyant or extravagant claims concerning one's professional excellence or abilities, or the use of untruthful or improbable statements likely to deceive the public or impose upon ignorant persons or which are likely to be injurious or harmful to public safety.

f. Engaging, directly or indirectly, in any form, in rebating to any person, persons, firm, partnerships, or corporations.

g. Engaging in the diagnosis of the human eyes or attempting to determine the refractive powers of the human eyes or attempting to prescribe for or treat diseases or ailments of the human eyes.

h. Displaying any refracting equipment that may tend to mislead the public into believing that eye examinations are being made on the premises in connection with optical dispensing.

i. Allowing any medical doctor, ophthalmologist, or optometrist to have any stock or any financial interest directly or indirectly in any dispensing opticianry or optical business establishment governed by the provisions of T.C.A. § 63–1401 et seq. provided that the foregoing shall not prevent an optician, not licensed as a dispensing optician, from working for an optometrist or ophthalmologist in an ophthalmologist's or optometrist's office.

j. Acting as the agent or representative of any physician or optometrist.

k. Failing to directly supervise and control an "apprentice dispensing optician" or "student dispensing optician" in performing any of the services which an apprentice or student is allowed to do under the provisions of T.C.A. § 63–1401.

It appears that the acts of which appellant were found guilty are within the scope of T.C.A. § 63–14–104(2) and Rule 0480–7–.01(g), above.

No merit is found in the issues presented by appellant. However, it is noted that T.C.A. § 63–14–104, above, empowers the Board to "suspend for a specified period of time ... or to revoke any certificate to practice".

It does not appear that the above quoted statutes empower the Board to order that:

Respondent's license to practice as a dispensing optician is hereby suspended for an indefinite period.... Respondent shall not practice as a dispensing optician until the license suspension has been terminated by the Board.

The judgment of the Trial Court and of the Board are affirmed except as to the length of suspension, and the cause is remanded to the Board for the determination of a specified period of time as the duration of the suspension of the certificate to practice of appellant. Costs of this appeal are adjudged against appellant.

AFFIRMED IN PART AND REMANDED.

LEWIS and CANTRELL, JJ., concur.